MICHAEL J. HEYMAN
United States Attorney

AINSLEY MCNERNEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Ainsley.McNerney1@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADEPOJU BABATUNDE SALAKO,<br><br>Defendant. | No. 3:25-cr-00063-SLG-KFR |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.

## PLEA AGREEMENT

### 1. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the Information in this case:

- Counts 1–7: Wire Fraud in violation of 18 U.S.C. § 1343

The United States agrees to recommend a sentence within the United States

Sentencing Guidelines guideline range. The parties agree that any sentence imposed in the instant matter should run concurrent to the sentence imposed in District of Colorado Case No.: 1:25-cr-00162-CNS. The defendant agrees to admit the Criminal Forfeiture Allegation in its entirety. The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Information.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

## 2. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty pleas if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the Information:

- Counts 1–7: Wire Fraud in violation of 18 U.S.C. § 1343

### 3.2. Elements of the Charged Offenses

The elements of the offense charged in Counts 1–7 are as follows:

1. The defendant knowingly devised a scheme or plan to defraud for the

U.S. v. Salako
3:25-cr-00063-SLG-KFR

purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

2. The statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

//

//

U.S. v. Salako
3:25-cr-00063-SLG-KFR

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are as follows:

Counts 1–7

- Imprisonment for up to 20 years

- A fine of up to $250,000

- Supervised release for up to 3 years

- A $100 special assessment

### 3.4. Other Matters Affecting Sentence

#### 3.4.1. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

#### 3.4.2. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. A defendant who is not a United States

U.S. v. Salako
3:25-cr-00063-SLG-KFR

citizen may be subject to deportation from the United States following conviction for a criminal offense, may be denied citizenship, and may not be permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including denaturalization and removal from the United States.

### 3.5. Restitution

There is currently no identifiable restitution. The defendant acknowledges that the Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

### 3.6. Forfeiture

The defendant admits the Criminal Forfeiture Allegation of the Information in its entirety, including any substitute asset and money judgment provisions, and that his interest, if any, in any of the property seized in connection with the investigation related to the Information is subject to forfeiture to the United States.

The defendant consents to the immediate entry of a Preliminary Order of Forfeiture as to the above property after the defendant's plea is taken by a United States Magistrate Judge or District Judge that is final as to the defendant pursuant to Fed. R. Crim. P. 32.2(b)(4)(A). The defendant waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing. The defendant further waives all constitutional, statutory, and equitable

U.S. v. Salako
3:25-cr-00063-SLG-KFR

defenses to the forfeiture of the above property. The defendant hereby warrants that he has no knowledge of any claims to, or liens or encumbrances on, the above property.

The defendant agrees not to file a claim, agrees to withdraw any previously filed claims, and agrees not to assist others in filing a claim, to any of the above referenced property in any administrative or judicial forfeiture or abandonment proceeding which has been or may be initiated by the United States, waives notice of any such proceeding, and consents to the forfeiture and abandonment of the property to the United States. This agreement does not affect or limit the government's ability to initiate or complete any administrative or civil forfeiture action. The defendant understands that, unless the Attorney General or an authorized designee determines otherwise, the forfeiture of assets described above shall not be counted towards satisfaction of any special assessment, fine, restitution, or any other penalty the court may impose.

The defendant further agrees to take all steps as requested by the United States to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture and pass clear title to the property to the United States, including, but not limited to, executing documents and testifying truthfully in any forfeiture proceeding.

The defendant understands and acknowledges that the United States is relying upon his truthful asset forfeiture disclosure and cooperation in entering into this plea agreement. The defendant's failure to cooperate or provide truthful information pursuant to these obligations will constitute a material breach of this agreement.

U.S. v. Salako
3:25-cr-00063-SLG-KFR

**4. Factual Basis**

The defendant admits the truth of the allegations in the Information and of the following statement:

Beginning on a date unknown, but at least by January 2, 2022, and continuing through at least February 28, 2022, within the District of Alaska and elsewhere, the defendant, as set forth below, did knowingly, and with intent to defraud, devise a scheme and artifice to defraud as to a material matter and to obtain money and property from the Alaska Department of Revenue (DOR) Permanent Fund Dividend (PFD) program by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts. For the purpose of executing such scheme and artifice and attempting to do so, the defendant caused to be transmitted, by means of wire communication in interstate commerce, the following writings, signs, and signals:

//

//

//

//

//

//

//

//

//

U.S. v. Salako
3:25-cr-00063-SLG-KFR

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 1 | January 2, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 2 | January 31, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 3 | February 3, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 4 | February 12, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 5 | February 12, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 6 | February 14, 2022 | Fraudulent submission of application routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |
| 7 | February 17, 2022 | Fraudulent submission of application originating from servers in the State of Pennsylvania, and routed through the State of Alaska Department of Revenue Permanent Fund Dividend online portal, requesting payment be routed to a bank in the State of Washington |

The Alaska PFD

The State of Alaska PFD is an annual dividend from investment earnings of mineral royalties that the Alaska DOR is responsible for paying out to Alaska residents. In 2022, the Alaska DOR paid $3,284.00 to each eligible PFD applicant.

//

U.S. v. Salako
3:25-cr-00063-SLG-KFR

Applicants can apply for the PFD online by registering a myAlaska account, which is an online digital platform administered by the State of Alaska that allows citizens to interact with multiple State of Alaska services with a single username and password.

In order to be eligible to receive one permanent fund dividend each year, an individual must, among other requirements, be a State of Alaska resident on the date of application, be a State of Alaska resident during the entire qualifying year, have been physically present in the state for at least 72 consecutive hours at some time during the prior two years before the current dividend year, and have been physically present in the state during the qualifying year. The defendant is a resident of Philadelphia, Pennsylvania. The defendant has never been a resident of the State of Alaska, nor has the defendant ever traveled to the State of Alaska.

<u>The Scheme to Defraud</u>

The defendant attempted to obtain monies from the Alaska PFD by submitting 7 PFD applications in the names of legitimate residents of the State of Alaska that routed PFD monies to bank accounts controlled by the defendant.

Beginning on a date unknown, the defendant obtained through fraudulent means the personal identifying information of the following residents of Alaska: J.B.; W.R.; T.C.; L.C.; R.C.; T.S.; and A.S. Once in possession of the PII of the 7 Alaska residents, the defendant registered Google email (Gmail) accounts for J.B.; W.R.; T.C.; L.C.; R.C.; T.S, and a 33mail email account for A.S. The defendant also used the stolen PII to gain access to each individual's already existing myAlaska online account through the Alaska DOR's

online portal.

In furtherance of the scheme, and once in control of the myAlaska accounts, the submitted 7 PFD applications, under the materially false and fraudulent pretense that the real Alaska residents, J.B.; W.R.; T.C.; L.C.; R.C.; T.S.; and A.S., were submitting the applications. The defendant changed the account information for all 7 applicants to re-route all email traffic from the true email accounts belonging to J.B.; W.R.; T.C.; L.C.; R.C.; T.S.; and A.S. to the Gmail and 33mail accounts that he created for each respective applicant.

In furtherance of the scheme, the defendant set up bank accounts with Coastal Community Bank, to which he routed all PFD monies for the 7 applications. Of the 7 applications, 5 routed monies to the same Coastal Community Bank account ending in ********3118 and opened in the defendant's true name. The routing number provided on all 7 applications attempted to route PFD monies to Coastal Community Bank in the State of Washington where Coastal Community Bank maintains its headquarters.

In an attempt to shield his identity and location, the defendant utilized a Virtual Private Network (VPN) when carrying out his scheme to defraud the Alaska PFD. The VPN allowed the defendant to submit applications using Internet Protocol (IP) addresses that appeared to originate inside the State of Alaska. The defendant used a VPN for 6 of the 7 PFD applications, resulting in submissions showing IP addresses originating inside of Alaska. Of these 6 applications, two (R.C. and T.C.) were submitted using the same IP address.

U.S. v. Salako
3:25-cr-00063-SLG-KFR

One of the applications, submitted using A.S.'s PII and myAlaska account, showed an IP address originating in Philadelphia, Pennsylvania, the defendant's known residence. This IP address appeared in records associated with the defendant's personal Gmail account t****salako76@gmail.com, showing that the defendant logged into his personal Gmail account on several occasions using the same IP address. The same IP address was identified in records for the defendant's J.B. Gmail account. The J.B. Gmail account was also linked to the t****salako76@gmail.com account, as well as the defendant's fraudulent Gmail accounts for W.R.; T.C.; L.C.; and R.C. Records showed that the same device was used to login to each of these accounts on various occasions.

In sum, the defendant admits that the government can prove the following:

1. On January 2, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident J.B. The defendant directed PFD monies for this application to Coastal Community Bank account 3118 in the State of Washington. The defendant's bank account statement showed a transaction test originating from the State of Alaska PFD division for this application.

2. On January 31, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident L.C. The defendant directed PFD monies to a Coastal Community Bank account in the State of Washington.

//

U.S. v. Salako
3:25-cr-00063-SLG-KFR

3. On February 3, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident T.C. The defendant directed PFD monies to a Coastal Community Bank account in the State of Washington.

4. On February 12, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident R.C. The defendant directed PFD monies for this application to Coastal Community Bank account 3118 in the State of Washington. The defendant's bank account statement showed a transaction test originating from the State of Alaska PFD division for this application.

5. On February 12, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident T.S. The defendant directed PFD monies for this application to Coastal Community Bank account 3118 in the State of Washington. The defendant's bank account statement showed a transaction test originating from the State of Alaska PFD division for this application.

6. On February 14, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident W.R. The defendant directed PFD monies for this application to Coastal Community Bank account 3118 in the State of Washington. The defendant's bank account statement showed a transaction test originating from the State of Alaska PFD division for this

application.

7. On February 17, 2022, the defendant submitted an application using the myAlaska account of and fraudulently representing himself to be Alaska resident A.S. The defendant submitted this application with an IP address originating in the State of Pennsylvania. The defendant directed PFD monies for this application to Coastal Community Bank account 3118 in the State of Washington. The defendant knowingly executed this scheme, falsely representing himself to be 7 different legitimate Alaska residents in an attempt to cause the Alaska Department of Revenue to disburse PFD monies to the defendant's bank accounts at Coastal Community Bank in the State of Washington.

The defendant admits that the government can prove that his representations on each of the 7 applications were material to the State of Alaska's determination as to the eligibility of that applicant to receive PFD funds. Indeed, once the State of Alaska determined that the applications were fraudulently submitted by the defendant, a resident of the State of Pennsylvania, the State of Alaska denied the applications. Had the defendant succeeded in his scheme to defraud the State of Alaska, he would have received $22,988.00.

The parties agree that the Court may rely upon this statement to determine whether there is a factual basis to support the guilty plea, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

U.S. v. Salako
3:25-cr-00063-SLG-KFR

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty. The Guidelines are not mandatory and the Court is not bound to impose a sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

#### 5.2.1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility—including by inappropriately seeking to delay sentencing—the United States will not make or, if already made will withdraw, this recommendation and motion.

U.S. v. Salako
3:25-cr-00063-SLG-KFR

### 5.3. Sentencing Recommendations

The United States Probation Office will prepare the defendant's presentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the Guidelines calculation in the presentence report, and to present evidence in support of their respective sentencing arguments.

The United States agrees to recommend a sentence within the United States Sentencing Guidelines guideline range. The parties agree that any sentence imposed in the instant matter should run concurrent to the sentence imposed in District of Colorado Case No.: 1:25-cr-00162-CNS. The defendant agrees to admit the Criminal Forfeiture Allegation in its entirety. Except as set forth in this agreement, the parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on any relevant criteria, including the stipulated facts set forth in Section 4, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory Sentencing Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553.

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle him to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement.

### 6. Additional Agreements by the United States

In exchange for the defendant's guilty plea and the Court's acceptance of the

U.S. v. Salako
3:25-cr-00063-SLG-KFR

defendant's plea and the terms of this agreement, the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth above.

However, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees that to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By entering into this agreement, the defendant intentionally and voluntarily waives the following trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been

made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

### 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed pursuant to this agreement, except on the grounds that the sentence exceeds the maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are

U.S. v. Salako
3:25-cr-00063-SLG-KFR

unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement.

### 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed pursuant to plea agreement, or any portion thereof, including the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; or a challenge to the voluntariness of the defendant's guilty plea. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or § 2255. The filing of such a challenge shall constitute a material breach of this agreement.

### 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in signing this agreement shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently

U.S. v. Salako
3:25-cr-00063-SLG-KFR

withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis. This provision applies regardless of whether the Court accepts this plea agreement.

### 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections (if any) to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Agreement to be Sentenced Within 120 days of Entering a Plea

The defendant agrees to be sentenced within 120 days of appearing before the Court to enter a guilty plea. The defendant acknowledges that if he seeks to delay sentencing past that time without the prior consent of the United States, this conduct will be considered inconsistent with acceptance of responsibility and will forfeit any entitlement to a Guidelines reduction for acceptance of responsibility. The United States acknowledges that a delay beyond 120 in sentencing attributable to the Court, the government, or other factors beyond the defendant's control will not be considered inconsistent with acceptance of

responsibility.

### 7.7. Release or Detention Pending Sentencing

The defendant agrees that he will remand into custody on the day that he agrees in court to the factual basis supporting the plea. The defendant further agrees not to seek release at any time between this date and the date of imposition of sentence.

### 7.8. Payment of Monetary Penalties and Cooperation with Financial Investigation

The defendant agrees that any monetary penalties imposed (including any fine, forfeiture, restitution, or assessment) will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 upon entry of judgment. The defendant acknowledges that any monetary penalties or forfeiture money judgment will be submitted to the Treasury Offset Program so that payments to the defendant may be applied to federal debts.

Within 30 days of the entry of the guilty plea in court, the defendant agrees to truthfully complete under penalty of perjury a financial statement provided by the United States Attorney's Office, and to update the statement within 7 days of any material change. The defendant further agrees to make full disclosure of all current and projected assets to the U.S. Probation Office before imposition of sentence and again before termination of supervised release or probation, such disclosures to be shared with the United States Attorney's Office.

### 7.9. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that he has failed in material way to perform any obligation

U.S. v. Salako
3:25-cr-00063-SLG-KFR

set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

## 8. The Parties' Acceptance of this Agreement

I, ADEPOJU BABATUNDE SALAKO, the defendant in this case, affirm this document contains all of the agreements made between me (with the assistance of my attorney) and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

I enter into this agreement voluntarily, with the intent to be bound, and with a full understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material

U.S. v. Salako
3:25-cr-00063-SLG-KFR

breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the Information. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any

particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Wire Fraud in violation of 18 U.S.C. § 1343, as charged in Counts 1–7 of the Information, and I admit the forfeiture allegations of the Information in their entirety.

DATED: 9/24/25

ADEPOJU BABATUNDE SALAKO
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 9/24/25

MICHAEL BECKER
Attorney for Adepoju Babatunde Salako

On behalf of the United States, I accept the defendant's offer to plead guilty under the terms of this plea agreement.

MICHAEL J. HEYMAN
United States Attorney

DATED: __September 30, 2025_____

s/ Ainsley McNerney
_____
AINSLEY MCNERNEY
Assistant United States Attorney
United States of America

U.S. v. Salako
3:25-cr-00063-SLG-KFR